# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

ASA ROBERTS # 10024-055                                              PLAINTIFF

VERSUS                                        CIVIL ACTION NO. 5:11cv62-DCB-RHW

VINCE LAUGHLIN                                                       DEFENDANT

## REPORT AND RECOMMENDATION

Petitioner Asa Roberts filed this 28 U.S.C. § 2241 petition for writ of habeas corpus on April 22, 2011, claiming a violation of his due process rights under the U.S. Constitution. The action arises from a September 10, 2010 disciplinary hearing which resulted in Roberts losing 27 days of good conduct time.[1] Roberts seeks vacation of the sanctions imposed, and expungement of the incident report from his record.

Roberts is incarcerated at Adams County Correctional Complex in Natchez, Mississippi, a private facility owned and operated by Corrections Corporation of America, which contracts with the Bureau of Prisons and houses low security federal inmates. Roberts is serving a 240-month sentence for a December 15, 2000 conviction of conspiracy to distribute, and possession with intent to distribute, five grams or more of cocaine base. His projected good conduct time release date is June 14, 2017. [9-1]

According to the incident report, on June 30, 2010, Special Investigative Agent J. Michael Jaynes received information that Roberts had violated the rules regarding outgoing mail on May 24, 2010. Roberts was alleged to have committed Prohibited Act Code 203 – threatening another with bodily harm by writing a letter to a former employee which stated, "I have some of

---
[1]Roberts also received a forfeiture of 60 days of non-vested good conduct time, 30 days disciplinary segregation suspended for 90 days, and six months commissary loss. [2-2, p. 15]

my peoples who is going to f*** hater up – plus get him to drop the statement he write ..." [9-3, p. 2], [9-6, p. 7] Roberts was also charged with violating Prohibited Act Code 101 assault– using the mail to convey the message that he was going to have his "peoples" accomplish the stated purposes. On August 6, 2010, Roberts was provided a copy of the incident report charging him with violating Prohibited Act Codes 101 and 203. [9-2, p. 3] Captain Dale London investigated the matter, and advised Roberts of his right to remain silent. Roberts made the statement, "I don't know anything about this ... You came to lock me up a couple of months ago and that is all I know." Captain London referred the matter to the Unit Disciplinary Committee UDC, which reviewed the matter and referred the incident for hearing by the Disciplinary Hearing Officer (DHO) due to the "level of incidents." [9-3, pp. 2-3] Roberts was again advised of his rights at the UDC hearing on August 9, 2010. [9-2, p. 3], [9-5, p. 2]

On August 25, 2010, Roberts was provided notice of the disciplinary hearing [9-4, p. 2] which was held on September 14, 2010. [9-6, p. 2] Roberts requested that Sergeant K . Ford serve as his staff representative, and that inmates Kodjovi Haden and Campion Mugweni appear as witnesses at the hearing. Brett Bradford was the DHO assigned to hear the case, and he conducted the hearing on September 14, 2010. According to both DHO Bradford's declaration and the report he issued at the conclusion of the hearing, Roberts, his staff representative and the two inmate witnesses requested by Roberts were present at the hearing. Both the inmate witnesses denied any knowledge about the incident giving rise to the charges against Roberts. [9-2, p. 4], [9-6, pp.1, 3-4] Roberts stated he knows no one named "hater," and denied writing the letter. [9-6, p. 2] After hearing the matter, considering the incident report and investigation, written reports from the staff members involved in the incident, Roberts' statements, and the handwritten letter in which the misconduct occurred, as well as a handwritten letter submitted by

Roberts as evidence that he did not write the offending letter, Bradford found Roberts violated Code 203, aiding in threatening bodily harm, but did not find Roberts violated Code 101. Bradford found that while Roberts denied writing the letter, the investigation found Roberts gave the letter to a staff member and requested that it be mailed. [9-2, p. 4] Bradford imposed sanctions disallowing 27 days good conduct time, forfeiture of 60 days non-vested good conduct time, 28 days disciplinary segregation suspended for 90 days, and six months loss of commissary privileges. [9-2, pp. 4-5], [9-6, p. 4]

## Law and Analysis

Roberts maintains he is innocent of the charge made in the incident report, that he is being framed for the violation. This Court's function is not to redetermine Roberts guilt or innocence, but to ensure that the disciplinary proceedings did not violate his right to due process. The Due Process Cause "does not protect every change in the conditions of confinement which has a substantial adverse effect upon a prisoner." *Madison v. Parker*, 104 F.3d 765, 767 (5th Cir. 1997)(quoting *Meachum v. Fano*, 427 U.S. 215, 227 (1976)). A prisoner's liberty interest protected by the Due Process Clause, is "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner,* 515 U.S. 472, 484 (1995)(citations omitted). Prisoners have been held not entitled to due process involving sanctions such as disciplinary segregation or administrative segregation and loss of commissary privileges. *Madison*, 104 F.3d at 767; *Pichardo v. Kinker*, 73 F.3d 612, 613 (5th Cir. 1995)(citing *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995)). However, disallowance of good conduct time

which will result in extension of an inmate's confinement requires that the inmate be afforded due process. *Wolff v. McDonnell*, 418 U.S. 539 (1974).

Under *Wolff* and the regulations governing prison disciplinary hearings, due process is satisfied when the inmate receives a finding from an impartial decision maker, and is given (1) at least 24 hours advance written notice of the charges; (2) an opportunity to present documentary evidence and testimony from witnesses; (3) assistance at the hearing if needed; and (4) a written statement of the evidence relied on and the reason for the disciplinary action. *Id.*, 418 U.S. at 563-70; 28 C.F.R. § 541.1 *et seq*.

The record before this Court indicates the required safeguards were met in the case at bar: Roberts was provided notice of the charges weeks before the disciplinary hearing; he was given the opportunity to, and did, present his own statement and documentary evidence intended to show he did not write the letter out of which the charges arose, and in fact he was not found guilty of one of the two charges against him; the inmate witnesses he requested were present and indicated they knew nothing about the incident which led to Roberts' charges; Roberts requested, and was afforded, the assistance of a staff representative; and he was provided a written statement of the evidence which DHO Bradford, an impartial decision maker, relied upon in imposing the disciplinary action.

Roberts claims his due process rights were violated because DHO Bradford denied his request to review SHU surveillance videotapes and log books, did not allow his two requested inmate witnesses, and convicted Roberts on insufficient evidence. The record either does not support, or belies Roberts' first two allegations. DHO Bradford's declaration unequivocally states that "at no time during the disciplinary hearing" did Roberts request that the SHU surveillance videotapes or log books be reviewed. [9-2, p. 4] And, as shown by both Bradford's

declaration and the DHO report, Roberts' inmate witnesses were present at the hearing, although both denied knowledge of the incident which led to Roberts' charges. [9-2, p. 4], [9-6, pp.1, 3-4] The undersigned finds no merit in Roberts' complaint that the DHO failed to consider affidavits from one of the inmate witnesses, both of which were dated after the DHO hearing and after the DHO report was issued. [2-1], [2-2, p. 20] Both documents state the affiant never testified or gave a statement, and was never interviewed by prison staff regarding Roberts' charges. Neither affidavit states that the affiant has any knowledge regarding the incident at issue. Even if the inmate witnesses were not present, Roberts has presented nothing to indicate what evidence the witnesses could provide, how he was prejudiced by their absence, or that their testimony would have changed the result of the proceeding. *See*, *Banuelos v. McFarland*, 41 F.3d 232, 234-235 (5th Cir. 1995)(disciplinary hearing officer did not violate inmate's rights by failing to call requested witnesses).

Finally, Roberts claims insufficient evidence supports the DHO's decision. In *Superintendent, Massachusetts Correctional Institution v. Hill,* 472 U.S. 445 (1985), the Supreme Court set out the constitutional evidentiary standard to be used in judicial review of prison disciplinary actions, holding that due process is satisfied if there is "some evidence" to show that the inmate committed the offense. "[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Id*., 472 U.S. at 455-56; *see also*, *Smith v. Rabalais*, 659 F.2d 539, 545 (5th Cir. 1981)(" No *de novo* review of the disciplinary board's factual finding is required, but the courts must consider whether at least the decision is supported by 'some facts' 'whether any evidence at all' supports the action taken by prison officials.") The undersigned is of the opinion that Roberts' Due

Process rights were protected in the disciplinary proceedings, and that the record before the Court contains evidentiary support for the DHO's decision.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Roberts' petition for habeas relief be dismissed with prejudice.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi* (Dec.1, 2011), after service of a copy of this Report and Recommendation, each party has fourteen (14) days to serve and file written objections to the Report and Recommendation. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge. Within seven (7) days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection.

An objecting party must specifically identify the findings, conclusions, and recommendations to which he objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within fourteen (14) days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding

or legal conclusion accepted by the District Court to which he did not object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 13th day of June, 2012.

/s/ Robert H. Walker
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE